UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JUAN FERNANDEZ,                                                         :
:
                            Petitioner,                                 :
:
        -v-                                                             :
:
UNITED STATES OF AMERICA,                                               :
:
                            Respondent.                                 :
:
------------------------------------------------------------------------X

12-CR-445 (JMF)
15-CV-2230 (JMF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/12/2016

JESSE M. FURMAN, United States District Judge:

       Petitioner Juan Fernandez was convicted, following a guilty plea, of conspiracy to distribute or possess with the intent to distribute controlled substances and possession of a firearm during and in relation to a drug-trafficking crime, and sentenced principally to 195 months' imprisonment. (Docket No. 453).[1] Proceeding *pro se*, he now moves, pursuant to Title 28, United States Code, Section 2255, to vacate, set aside, or correct his sentence, alleging that he received ineffective assistance of counsel in various ways. (Memorandum of Law in Support of Motion to Vacate (Docket No. 538) ("Pet'r's Mem.") 13). For the reasons that follow, Fernandez's petition is DENIED in its entirety.

## BACKGROUND

       On June 5, 2012, Fernandez was charged (in an indictment naming nineteen other defendants) with two counts: (1) conspiracy to distribute or possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A); and (2) discharging a firearm during and in relation to a drug-trafficking offense,

---

[1]     Unless otherwise noted, all docket citations are to the criminal case, 12-CR-445 (JMF).

in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2. (Docket No. 2). Sarah Baumgartel of the Federal Defenders of New York was assigned to represent Fernandez. (Docket No. 61). On March 20, 2013 — after bringing an unsuccessful motion to suppress wiretap evidence (*see* Docket Nos. 144, 196) — Fernandez pleaded guilty, pursuant to a plea agreement, to the narcotics conspiracy charge and to a lesser included offense of the second count, namely *possessing* a firearm during and in relation to the drug-trafficking offense, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) and 2. (Government Memo in Opposition of Motion to Vacate (Docket No 552) ("Gov't Mem."), Ex. A, at 2-3). Notably, whereas the crimes with which Fernandez had been charged carried a combined mandatory minimum of 240 months' imprisonment, the crimes to which he pleaded guilty carried a combined mandatory minimum of 180 months' imprisonment. Additionally, in exchange for Fernandez's plea, the Government also agreed not to file a prior felony information (*id.* at 3), which would have resulted in a mandatory minimum of 240 months on Count One alone (and a combined mandatory minimum of 360 months). *See* 21 U.S.C. §§ 841(b)(1)(A), 851.

At the outset of the plea proceeding, Baumgartel, at Fernandez's request, made an extensive (and unusual) statement about the fairness of the federal narcotics laws and mandatory minimum sentences. (Docket No. 261 ("Plea Tr.") at 3-7). Addressing Fernandez, the Court responded by emphasizing as follows: "You are under absolutely no obligation to enter a plea of guilty. It is your choice whether you plead guilty or you choose to go to trial, and no one can force you to plead guilty." (*Id.* at 8). Fernandez confirmed that he understood and that he wished to proceed with the guilty plea notwithstanding Baumartel's statement on his behalf. (*Id.* at 10). He went on to confirm, among other things, that he had discussed the charges against him and any possible defenses to those charges with Baumgartel, that Baumgartel had explained the

2

consequences of entering a plea of guilty to him, and that he was satisfied with Baumgartel's representation of him.  (*Id.* at 12-13).  In response to questioning, Fernandez further acknowledged that he understood the elements of the offenses to which he was pleading; that he understood the maximum and minimum sentences that applied to those crimes; that he had read the plea agreement; that he had discussed the plea agreement with Baumgartel; and that he fully understood the terms of the agreement.  (*Id.* at 34-38).  Most relevant here, Fernandez confirmed his understanding that, pursuant to the terms of the plea agreement, he was waiving his right to appeal or otherwise challenge (including in a motion pursuant to Section 2255) any sentence within or below the United States Sentencing Guidelines range to which the parties had stipulated — namely, 180 to 195 months' imprisonment.  (*Id.* at 37; *see* Gov't Mem. Ex. 4, at 7).

      On May 3, 2013, about a month and a half after Fernandez's plea, Baumgartel advised the Court that Fernandez wanted new counsel.  (Docket No. 280).  At a conference on May 9, 2013, Baumgartel proffered that Fernandez was "concerned" that she had given him "bad advice with respect to whether he should enter a plea" and that he had "talked about possibly withdrawing his plea," a course of action that she did not believe "would be in his interest." (Gov't Mem. Ex. C ("Subst. Tr.") at 3).  She explained that, in her view, "it would be extremely beneficial" for Fernandez to "consult with a different lawyer."  (*Id.*).  Speaking on his own behalf, Fernandez acknowledged that Baumgartel was "a good lawyer," but questioned her preparation for his case and indicated that they did not "see eye to eye."  (*Id.* at 5).  "I think I just need a second opinion," he continued.  "I'm [sic] just need somebody to overlook [sic] my case again and see if something went wrong during the case, during the process."  (*Id.* at 6).  The Court appointed George Goltzer to replace Baumgartel, and expressly noted that Fernandez

could consult with Goltzer about whether to move to withdraw his guilty plea. (*Id.* at 4, 6; *see also* Docket No. 467 ("Sent. Tr.") at 26-27). Fernandez ultimately stood by his plea.

When Goltzer was appointed, the Court adjourned sentencing to October 2, 2013. (Subst. Tr. at 8-9). Thereafter, at the parties' request, the Court adjourned sentencing three times to allow Fernandez an opportunity to cooperate with the Government. (*See* Docket Nos. 378, 419, 430). On February 28, 2014, after the Court denied the Government's request for a fourth adjournment, Fernandez appeared for sentencing. (Sent. Tr. at 46; Docket No. 453). At the outset of the proceeding, the Court confirmed that it had received and reviewed, among other things, Goltzer's sentencing submission on Fernandez's behalf, which requested a sentence of 180 months, the mandatory minimum. (Sent. Tr. at 3, 31). Fernandez then acknowledged that he had read the presentence report and discussed it with Goltzer. (Sent. Tr. at 4-5). Based upon evidence presented at the trial of one of Fernandez's co-defendants — evidence indicating that the drug conspiracy involved substantially larger quantities of drugs than either the plea agreement or the presentence report had reflected — the Court went on to find that the applicable Sentencing Guidelines range was 228 to 270 months' imprisonment. (Sent. Tr. at 17-18). Exercising its discretion under Title 18, United States Code, Section 3553(a), however, the Court sentenced Fernandez to a combined sentence of 195 months' imprisonment (135 months on Count One and 60 months, to be served consecutively, on Count Two). (*Id.* at 30-32). In explaining its leniency, the Court explicitly cited, among other things, "mitigating circumstances cited in Mr. Goltzer's letter." (*Id.* at 31). The Court explained that it was "not inclined to go as low as the mandatory minimum, as Mr. Goltzer [had] asked," in part because of "the amount of drugs involved" and the higher Sentencing Guidelines range. (*Id.* at 32).

4

At the conclusion of sentencing, the Court advised Fernandez that — to the extent he had "not given up [his] right to appeal through [his] plea of guilty and the plea agreement" — he had the right to appeal and that any notice of appeal had to be filed within fourteen days of entry of the judgment of conviction. (*Id.* at 38). Fernandez did not file a direct appeal.

## LEGAL STANDARDS

Section 2255 permits a prisoner in federal custody to challenge his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). As a general matter, a Section 2255 motion requires a hearing unless files and records conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *see also Machibroda v. United States,* 368 U.S. 487, 494 (1962); *Pham v. United States,* 317 F.3d 178, 184 (2d Cir. 2003). No hearing is required, however, where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda,* 368 U.S. at 495. Instead, to warrant a hearing, the petitioner "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). A district court has discretion to exercise its common sense when determining whether to hold a hearing and may investigate facts outside the record without the personal presence of the petitioner. *See Machibroda*, 368 U.S. at 495; *see also, e.g.*, *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001).

## DISCUSSION

In this case, Fernandez's only claim is that he received ineffective assistance of counsel, but he bases that claim on multiple alleged failings of *both* Baumgartel and Goltzer. In particular, liberally construed, *see, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013), Fernandez's petition alleges that he received ineffective assistance of counsel because

(1) Baumgartel failed to inform him of the likely consequences of pleading guilty, including the maximum sentence if he was convicted at trial; (2) Baumgartel failed to conduct an adequate pretrial investigation; (3) Baumgartel failed to file substantive pre-trial motions; (4) Goltzer failed to review or explain the presentence report to him prior to sentencing; (5) Goltzer failed to file objections to the presentence report; (6) Goltzer failed to submit mitigating evidence at sentencing; (7) Goltzer failed to object to Fernandez's sentence as "substantively unreasonable"; and (8) Goltzer failed to file a notice of appeal as instructed. (Pet'r's Mem. 13, 21, 24, 26). All but the last contention — that Goltzer failed to file a notice of appeal as Fernandez directed — can be swiftly and easily rejected as waived and meritless.

## A. Allegations With Respect to Baumgartel and Sentencing

As an initial matter, all of Fernandez's claims relating to Baumgartel and Goltzer's conduct with respect to sentencing were waived. The Second Circuit has repeatedly — and emphatically — held that a defendant's knowing and voluntary waiver of the right to appeal a sentence is generally valid and enforceable. *See, e.g.*, *United States v. Harrison*, 699 F.3d 158, 159 (2d Cir. 2012); *United States v. Riggi*, 649 F.3d 143, 147-48 (2d Cir. 2011); *United States v. Buissereth*, 638 F.3d 114, 117-18 (2d Cir. 2011); *United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009) (per curiam); *United States v. Lee*, 523 F.3d 104, 106-07 (2d Cir. 2008); *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("*Morgan II*"); *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998) (per curiam); *United States v. Salcido-Contreras*, 990 F.2d 51, 52-53 (2d Cir. 1993) (per curiam). In fact, the Court of Appeals has gone so far as to say that "*in no circumstance* may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to

6

the agreement." *Pearson*, 570 F.3d at 485 (internal quotation marks and alterations omitted) (emphasis added). This near-ironclad rule "recognizes that 'plea agreements can have extremely valuable benefits to both sides — most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt.'" *United States v. Morgan*, 386 F.3d 376, 380 (2d Cir. 2004) ("*Morgan I*") (quoting *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997)).

More specifically, courts in this Circuit "have 'repeatedly upheld the validity of [appeal] waivers' if they are 'knowingly, voluntarily, and competently provided by the defendant.'" *Riggi*, 649 F.3d at 147 (quoting *Gomez-Perez*, 215 F.3d at 318) (alteration in original). Indeed, as long as an appellate waiver was knowing and voluntary, and the Government has fulfilled its end of the bargain, the exceptions to enforceability are "very circumscribed." *Gomez-Perez*, 215 F.3d at 319. In fact, they are effectively limited to circumstances in which "the sentence imposed was based on unconstitutional factors — such as race, naturalized status, or the ability to pay restitution" or when a sentencing court provides no rational whatsoever for the sentence. *Riggi*, 649 F.3d at 147 (citations omitted); *see also Buissereth*, 638 F.3d at 117-18; *Lee*, 523 F.3d at 106-07. Thus, for example, the Second Circuit has "upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *Gomez-Perez*, 215 F.3d at 319; *accord Buissereth*, 638 F.3d at 115-16; *Djelevic*, 161 F.3d at 107; *Rosa*, 123 F.3d at 98; *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). Additionally, the Court has repeatedly upheld appellate waivers even where the defendant's claim on appeal did not become available until after the plea agreement was executed. *See, e.g.*, *United States* v.

*Oladimeji*, 463 F.3d 152, 155-56 (2d Cir. 2006) ("[T]he possibility of a favorable change in the law after a plea is simply one of risks that accompanies pleas and plea agreements." (quoting *Morgan II*, 406 F.3d at 137)).

Here, the record makes clear that Fernandez knowingly and voluntarily waived his right to challenge his sentence of 195 months. Fernandez signed a plea agreement expressly waiving his right to file a direct appeal or collaterally attack any sentence within or below the stipulated Sentencing Guidelines range of 180 to 195 months' imprisonment. (Gov't Mem. Ex. A, at 6; *see* Plea Tr. 35-36). Further, during the plea proceeding, Fernandez confirmed that no one had forced him or threatened him to sign the plea agreement and that no one had offered him any inducements or made him any promises to sign the plea agreement (other than what was set forth on the record or in the agreement itself) either. (Plea Tr. at 38). He also indicated that he himself had read the plea agreement, that he had reviewed it with Baumgartel, and that he "fully" understood its terms. (Plea Tr. at 36). Even more significant for present purposes, Fernandez expressly and specifically acknowledged that he understood the waiver provision in the plea agreement — namely, that he was "agreeing not to appeal . . . or otherwise challenge any sentence within or below the stipulated sentencing guidelines range of 180 to 195 months of imprisonment." (*Id.* at 37). These unambiguous statements on the record confirm that Fernandez knowingly and voluntarily waived his right to collaterally attack the sentence he ultimately received, and they belie any belated and self-serving suggestion that Baumgartel compelled him to enter the plea agreement or failed to adequately explain its terms. Given that record, given what Fernandez received in exchange for his plea (including, most notably, the Government's acceptance of a plea to a lesser-included offense and agreement not to file a prior felony information), and given that Fernandez makes no claim that his sentence was imposed on

8

the basis of a constitutionally impermissible factor or other prohibited factor, not to enforce the waiver in these circumstances "would render the plea bargaining process and the resulting agreement meaningless." *Salcido-Contreras*, 990 F.2d at 53.[2]

In any event, even if Fernandez's allegations relating to Baumgartel and Goltzer's conduct with respect to sentencing had not been waived, they are meritless. For one thing, Fernandez proffers no facts that would support his claims. For example, he fails to identify any witnesses or evidence that counsel should have uncovered (either for purposes of trial or for purposes of sentencing), to cite any arguments (legal or factual) that counsel should have made but did not, or to explain how he was forced to accept the plea agreement (despite his statements on the record to the contrary). *See, e.g.*, *Rosa* v. *United States*, 170 F. Supp. 2d 388, 399, 403 (S.D.N.Y. 2001) (dismissing a Section 2255 motion where the petitioner gave "no explanation of precisely what his attorney failed to do," offering "nothing but a list of conclusory allegations of being 'forced' to sign the agreement, of some unidentified person 'lying' to him regarding his sentence, of his 'rushing' into the plea without investigation and the plea not having been

---

[2] In his reply, Fernandez alleges that Baumgartel gave him a paper to read from during the plea proceeding, and suggests on that basis that his plea was not knowing and voluntary. (Docket No. 583 at 4). Based upon its own observations of Fernandez at the plea proceeding, the Court finds that that allegation is false; indeed, the Court would not have allowed Fernandez to read from a piece of paper during the plea colloquy (except perhaps in describing the factual basis for his plea, as defendants often prepare written allocutions on that score with the assistance of counsel). In any event, even if Fernandez had read from a prepared script during his plea allocution, that would not necessarily establish that his plea was involuntary or unknowing. *See, e.g., Ramos v. United States*, No. 03-CR-724 (GEL), 2010 WL 4922521, at *4 (S.D.N.Y. Nov. 24, 2010) (finding "nothing inappropriate" about defense counsel preparing a statement for the defendant to read from during a plea colloquy "so long as the defendant agrees the statement is accurate and voluntarily accepts the statement"); *Ellis v. United States*, No. CV-99-04334 (RR), 2000 WL 34448875, at *2-3, 5 (E.D.N.Y. Mar. 3, 2000) (finding, in light of the Court's questioning, that the defendant's plea was knowing and voluntary even though she read a prepared statement in her allocution); *United States v. Felzenberg*, No. 93-CR-460 (SS), 1998 WL 152569, at *12 (S.D.N.Y. Apr. 2, 1998) (same).

'knowingly and intelligently' made"). Moreover, almost all of Fernandez's claims are explicitly refuted by the record. For instance, Baumgartel *did* file a pretrial motion seeking to suppress critical evidence against Fernandez (*see* Docket No. 143), and explicitly asserted Fernandez's right to seek a severance from his co-defendants (*see* Docket No. 194). Fernandez expressly confirmed his understanding of the elements of the offenses to which he pleaded guilty and the maximum sentences (Plea Tr. at 22-31), and admitted on the record that Goltzer did in fact review the presentence report with him (Sent. Tr at 4-5). And Goltzer *did* file a sentencing letter on his behalf and sought the lowest sentence that could be imposed. (Docket No. 451). In the face of that record, Fernandez's claims fall flat. *See, e.g.*, *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977) (finding that a defendant's guilty plea statements "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity" and any contrary "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Garafola v. United States*, 909 F. Supp. 2d 313, 331 (S.D.N.Y. 2012) (summarily dismissing a claim that "wholly contradicts the petitioner's previous sworn statements in court at the plea proceeding — that the petitioner understood the charges against him and that he had adequate time to discuss the charges and the Plea Agreement with his attorney").

Finally, Fernandez has not (and could not) prove prejudice, as required to prevail on a claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to his plea and pre-plea allegations, Fernandez would have to show that "there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Gonzalez*, 722 F.3d at 130 (quoting *Hill v. Lockhart*, 474

U.S. 52, 59 (1985)).  Fernandez falls far short of doing so, merely asserting in conclusory fashion that he "would have opted to proceed to trial" or pleaded guilty to the indictment to preserve his right to appeal.  (Pet'r's Mem. 20).  But had Fernandez pleaded guilty to the indictment or been convicted after trial, his mandatory minimum sentence would have been 240 or (if the Government had filed a prior felony information) 360 months rather than the 180 months he bargained for in his plea agreement.  And Fernandez points to no colorable issues that he could have realistically appealed.  As for sentencing, Fernandez fails to establish that Goltzer could have done anything to obtain an even lower sentence than he did.  As it is, the Court granted a substantial variance below the applicable Guidelines range of 228 to 270 months' imprisonment, explicitly citing Goltzer's arguments for leniency as one basis.  (Sent Tr. at 31).  Notably, Fernandez himself concedes that his sentence of 195 months was "lenient."  (Pet'r's Mem. 26).

**B.  Allegations With Respect to Filing a Notice of Appeal**

Fernandez's assertion that Goltzer failed to file a notice of appeal as instructed requires separate consideration, in part because it is not subject to the appeal waiver.  That is, even when a defendant waives his right to appeal, counsel must file a notice of appeal if the defendant instructs him or her to do so.  *See, e.g.*, *Gomez-Perez*, 215 F.3d at 319.  If counsel fails to do so, both prongs of *Strickland* are satisfied — regardless of whether the defendant could have raised a meritorious issue on appeal.  *See, e.g.*, *Campusano v. United States*, 442 F.3d 770, 774-75 (2d Cir. 2006).  As a result, a petitioner who claims that he asked his counsel to file an appeal is entitled to a hearing to determine whether the petitioner did, in fact, make that request.  *See id.* at 776.  Significantly, however, the hearing need not be testimonial; instead, a district court has discretion to determine how to develop the record and may rely solely on letters, documentary evidence, and affidavits.  *See Chang*, 250 F.3d at 85-86 (citing *Raines v. United States*, 423 F.2d

526, 529-30 (4th Cir. 1970)). A petition may not be summarily dismissed if there is a factual dispute, but a court can decide disputed facts on the basis of written submissions if in-person testimony would add little or nothing to the written submissions — if, for example, the petitioner's affidavit contains a "generic claim . . . based solely on [petitioner's] own highly self-serving and improbable assertions." *Id*. at 86.

The Second Circuit's decision in *Padin v. United States,* 521 F. App'x 36 (2d Cir. 2013) (summary order), is instructive. There, as here, the petitioner asserted that his counsel had failed to file a notice of appeal as instructed. In response to that assertion, the Government submitted an affidavit from the petitioner's former defense counsel, in which counsel denied having been asked by the petitioner to file a notice of appeal. *See id.* at 37. Thereafter, the petitioner submitted an affidavit asserting that he had in fact told counsel that he wanted to appeal the sentence; he also submitted an affidavit from his wife stating that she had gone to counsel's office to discuss "what could be done about his sentence" and had explicitly asked counsel about an appeal. *Id.* Despite the competing affidavits, the district court "declined to hold a full-blown testimonial hearing," and denied the petitioner's motion pursuant to Section 2255. *Id.* at 38. On appeal, the Second Circuit affirmed, concluding that the district court had "acted within its discretion in declining to hold a full-blown testimonial hearing." *Id.* "In light of the detailed affidavit of defense counsel, the transcripts of the proceedings, the district court's observations of [the petitioner] and his interactions with counsel, and the district court's careful factual analysis," the Court reasoned, "there was a sufficient evidentiary record to permit the district court to reject, without a full testimonial hearing, [the petitioner's] claim that he asked his counsel to file a notice of appeal on his behalf." *Id.* (citing *Chang*, 250 F.3d at 85-86).

12

Although unpublished, *Padin* all but compels the conclusion that Fernandez's motion should be denied and that there is no need to hold a full testimonial hearing. *See, e.g.*, *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) (stating that a district court is not "at liberty . . . to disregard," let alone "contradict[,] a Second Circuit ruling squarely on point merely because it was rendered in a summary order"); *see also United States v. Payne,* 591 F.3d 46, 58 (2d Cir. 2010) ("[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases").  In light of Fernandez's allegations, the Court directed Goltzer to submit an affidavit regarding Fernandez's alleged request that an appeal be filed.  (Docket No. 573).  Goltzer did so (requesting that the affidavit be filed under seal), and categorically denied "that [he] failed to follow any request from Fernandez to file a notice of appeal in this case or to directly appeal from the judgment in this matter."  (Goltzer Affidavit ("Goltzer Aff.") ¶ 3).  Fernandez, Goltzer avers, "never requested that [he file a notice of appeal] orally and [Goltzer] never received any other form of communication request that [he] file a notice of appeal."  (*Id.* ¶ 3).  Goltzer goes on to explain that that rather than pursue an appeal, his post-sentence strategy was to pursue a reduction in Fernandez's sentence by having Fernandez cooperate with the Government.  (*Id*. ¶ 4).  When the Government ultimately refused to grant Fernandez a cooperation agreement, Goltzer states, he "advised Mr. Fernandez of this sad news and considered [his] representation finished."  (*Id.*)

Admittedly, Fernandez contradicts Goltzer in a reply declaration, asserting (albeit for the first time) that, "after he was sentenced, he met with Goltzer briefly in the hallway of the courtroom and he informed [Goltzer] that he wanted to appeal his case." (Response to Goltzer Declaration (Docket No. 597) ("Pt'r's Resp. Goltzer Decl.") 2; *see also id.* (stating that Goltzer advised Fernandez that Goltzer would "get in contact with [Fernandez] so we may move forward

13

with a [sic] appeal.")).  But Fernandez's declaration is otherwise consistent with Goltzer's account, acknowledging that after the sentencing proceeding the two were in regular contact about the possibility of cooperating and that "every communication that Fernandez had with Goltzer was about [Fernandez] cooperating with the government."  (*Id.* at 2; *see* Goltzer Aff. ¶ 4).  And, in any event, Fernandez's assertions are not enough by themselves in light of *Padin*, where the petitioner submitted not only an affidavit from himself, but also one from his wife.  *See Padin*, 521 F. App'x at 37-38.  Significantly, Fernandez provides no evidence to corroborate his account of the hallway conversation with Goltzer.  He cites no other instances in which he discussed an appeal with Goltzer, despite the fact that, after sentencing, they regularly communicated about the possibility of cooperation.  And, despite having been informed at sentencing that he had only fourteen days to file a notice of appeal (Sent. Tr. at 38), he waited over a year to allege that Goltzer failed to file a notice of appeal.

At bottom, Fernandez's claim, like the petitioner's claim in *Chang*, is a "generic" one that can be (and often is) made in any case in which the defendant fails to file a notice of appeal. 250 F.3d at 86.  That is not enough to warrant a hearing, let alone relief, given, among other things, the affidavit from Goltzer, which unambiguously states that Fernandez did not request that he file a notice of appeal; the plea agreement, in which Fernandez unambiguously waived the right to appeal the sentence he ultimately received; the plea and sentencing transcripts, which make clear that Fernandez understood his rights, the nature of the charges to which he pleaded guilty, and the contents of the plea agreement; the record between the plea proceeding and sentencing, which corroborates Goltzer's claim that he and Fernandez opted to pursue cooperation rather than an appeal; and the utter lack of credibility of Fernandez's other claims in the present motion, most of which are, as discussed, directly refuted by the record.  *See Chang*,

250 F.3d at 86 (holding that the district court did not err in denying a Section 2255 motion where "[t]rial counsel's detailed description of events was eminently credible" and the petitioner offered nothing more than "his own highly self-serving and improbable assertions").[3]

## CONCLUSION

For the reasons stated above, there is no need to hold a full testimonial hearing, and Fernandez's motion is DENIED in its entirety. One housekeeping issue remains. Goltzer, presumably out of an abundance of caution, requested that his affidavit be filed under seal and the Court temporarily granted that request. (Docket No. 587). Although directed to do so, Fernandez did not make any argument for keeping the affidavit under seal; moreover, his own declaration — filed publicly on the docket — discloses his attempts to cooperate with the Government. In light of that, the Court concludes that there is no basis to keep the Goltzer affidavit under seal. *See, e.g.*, *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of public access to judicial documents).

As Fernandez has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *see also Lozada v. United*

---

[3] Even where a defendant does not ask his counsel to file an appeal, counsel "has a constitutionally imposed duty to consult with the defendant about whether he wants to file an appeal if 'there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" Padin, 521 F. App'x at 38 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). In evaluating "whether a rational defendant would want to appeal or whether the defendant reasonably demonstrated an interest in appealing, a court must consider all the relevant factors, including whether the conviction followed a trial or a guilty plea, whether the defendant received the sentence bargained for as part of a plea, and whether the plea expressly reserved or waived some or all appeal rights." *Id.* Evaluating those factors here, there is no basis to conclude that Goltzer had a duty to consult with Fernandez about whether he wanted to file an appeal. Among other things, Fernandez entered a guilty plea (and, even after receiving and consulting with new counsel, opted to stand by that plea); obtained a favorable plea deal from the Government; waived his right to appeal any sentence within or below the stipulated Sentencing Guidelines range of 180 to 195 months' imprisonment; and received a sentence that he himself describes as "lenient" (Pet'r's Mem. 26), well below the applicable Guidelines range.

*States*, 107 F.3d 1011, 1015-16 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997). Moreover, this Court certifies pursuant to Title 28, United States Code, Section 1915(a)(3) that any appeal from this Order would not be taken in good faith, so *in forma pauperis* status is denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close Docket No. 15-CV-2230, to unseal the Goltzer affidavit, and to mail a copy of this Opinion and Order to Fernandez.

SO ORDERED.

Date: September 12, 2016
New York, New York

JESSE M. FURMAN
United States District Judge